UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-2020 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THOMAS HANRAHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

By mistake, Chicago police officers arrived at Ashley Roberts's apartment one morning to investigate a report of trespassing. Guns drawn, the officers forced their way in and conducted a search. As it turned out, the police had the wrong address.

Roberts responded by suing the officers, the City of Chicago, and her landlord. The City and Sergeant Hanrahan moved to dismiss the complaint in part.

For the following reasons, the partial motion to dismiss is granted.

## Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

In March 2022, Ashley Roberts resided at 4830 West Van Buren Street, Apartment 1. *See* Am. Cplt., at ¶ 12 (Dckt. No. 34). One morning, Roberts was lounging in her underwear "when she heard a loud banging on the front door" of her apartment. *Id.* at ¶ 13.

She approached the door and asked who was there. *Id.* at ¶ 14. Roberts heard an alarming response.

Multiple voices said "CPD." They told her to "open the fucking door" or they "would knock the bitch down." *Id.*

Roberts peered through the peephole and saw several officers from the Chicago Police Department with their guns drawn. *Id.* at ¶ 15. She tried to unlock the door, but she was too late. *Id.* at ¶ 16. The door, already damaged by the officers' battering ram, "flew open." *Id.*

A dozen male officers poured into the apartment and conducted a search. *Id.* at ¶ 17. Meanwhile, Ashley needed to use the bathroom because she was menstruating. *Id.* at ¶ 18. An officer blocked her path, but she forced her way past him. *Id.* at ¶¶ 19–20. He hovered in the bathroom doorway while she used the bathroom. *Id.*

Roberts emerged from the bathroom crying. *Id.* at ¶ 21. She asked the officers why they had come to her apartment. *Id.* "[S]he told them they had the wrong person." *Id.*

Eventually, one of the officers asked for Roberts's address. *Id.* at ¶ 22. She said "4830." *Id.* at ¶ 23.

That's when the officers realized their mistake. An officer said: "Fuck, we are looking for 4838." *Id.*

In a flash, the flood of officers receded. They rushed out of her apartment as quickly as they had come. *Id.* at ¶ 24. Roberts discussed the incident with Sergent Thomas Hanrahan before he left. *Id.* at ¶ 25. Then Hanrahan moved on, too. *Id.*

The police were responding to a call from Joseph Debela. *Id.* at ¶ 28. Debela worked for DSK LLC, which owned, operated, and/or managed Roberts's apartment complex. *Id.* at ¶¶ 5, 26.

Debela had reported a trespasser at 4838 West Van Buren Street, not 4830. *Id.* at ¶ 28. So, a mistake somewhere along the line led the officers to enter Roberts's apartment.

While the officers were on the scene, Debela called and spoke with Roberts. *Id.* at ¶ 26. Debela laughed at her, and "asked if she had been scared." *Id.* at ¶ 27. Eventually, Debela showed up in person. *Id.* at ¶ 30.

Roberts responded to the ordeal by suing the City of Chicago, Sergeant Hanrahan, other unknown CPD officers, Joseph Debela, and DSK LLC. *See* Cplt. (Dckt. No. 1). For ease of reference, the Court will call the City and the officers the "City Defendants," and will call the landlord and his company the "Private Defendants."

Roberts originally filed suit *pro se*, but she later retained counsel and filed an amended complaint.

The amended complaint has four counts. The first two counts are federal claims against the officers and the City, and the latter two counts are state-law claims against Joseph Debela and his company.

Count I is a Fourth Amendment claim against the City Defendants. Count II is an invasion of privacy claim under the Fourth Amendment against the City Defendants.

Count III is an invasion of privacy claim under state law against Joseph Debela and DSK LLC. *Id.* Count IV is a state-law claim of intentional infliction of emotional distress against Joseph Debela and DSK LLC.

The City and Sergeant Hanrahan moved to dismiss the amended complaint. They seek to trim the case, not dismiss it altogether.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Analysis**

The Court will start with some common ground. The City Defendants moved to dismiss part of the complaint, and Roberts agreed. The Court will do that trimming first.

Next, the Court will turn to the only live issue: whether the invasion of privacy claim under the Fourth Amendment (Count II) is duplicative of the Fourth Amendment claim (Count I).

**I.      Common Ground**

In the motion to dismiss, the City Defendants challenged some of the claims on the margins. At times, it looks like the City Defendants simply wanted to clarify the scope of the claims. Roberts agreed with a few of the challenges and clarifications.

First, the City Defendants moved to dismiss the state-law claims (Counts III & IV) against Sergeant Hanrahan as time-barred. *See* Mtn. to Dismiss, at 4 (Dckt. No. 35). That

4

argument is somewhat surprising. After all, in her complaint, Roberts framed and styled the state-law claims as claims against the Private Defendants only, not the City Defendants.

The heading of each count says that it is against "DEFENDANT DSK LLC AND DEFENDANT DEBELA." Even so, the paragraphs do mention the police raid, so maybe the City Defendants were trying to be extra-careful in the motion to dismiss, out of an over-abundance of caution.

In response, Roberts confirmed that she is not bringing the state-law claims against the City Defendants. *See* Pl.'s Resp. to Mtn. to Dismiss, at 3 (Dckt. No. 38). Problem solved. Counts III and IV are dismissed to the limited extent that they could be read to raise a claim against the City Defendants.

Second, the City argues that it has no vicarious liability for the actions of the officers. *See* Mtn. to Dismiss, at 5 (Dckt. No. 35). Roberts agrees. *See* Pl.'s Resp. to Mtn. to Dismiss, at 3 (Dckt. No. 38). So, Counts I and II are dismissed to the extent that they could be read to create vicarious liability.

Third, the City argues that it can't have liability under a theory of *respondeat superior*. *See* Mtn. to Dismiss, at 5 (Dckt. No. 35). Roberts concedes the point. *See* Pl.'s Resp. to Mtn. to Dismiss, at 3 (Dckt. No. 38). So the Court dismisses any claims that seek to impose liability against the City based on a theory of *respondeat superior*.

With those clarifications, there is no other basis in the complaint for the City to remain as a defendant. There are no other claims against the City, so the City is dismissed.

## II.    The Fourth Amendment Claims

Roberts brings two constitutional claims against Sergeant Hanrahan, unknown officers, and the City. As an aside, the City is no longer a party, so going forward, the Court will refer to Sergeant Hanrahan and the unknown officers as the "Officer Defendants."

The first claim alleges an unreasonable search and seizure in violation of the Fourth Amendment. The second claim alleges an invasion of privacy under the Fourth Amendment. It rings a familiar bell. Like Count I, Count II alleges that the police entered her apartment "without probable cause or a warrant, in violation of the Fourth Amendment." *See* Am. Cplt., at ¶ 47 (Dckt. No. 34).

The Officer Defendants moved to dismiss, arguing that Count I and Count II cover the same ground. As they see things, the two claims say the same thing, and a complaint can't bring the same claim twice.

"Courts have authority to dismiss duplicative claims if they allege the same facts and the same injury." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014) (Dow, J.); *Beringer v. Standard Parking O'HARE Joint Venture*, 2008 WL 4890501, at *4 (N.D. Ill. 2008). Plaintiffs can plead in the alternative, but they can't plead in the duplicative. *See Barrow*, 38 F. Supp. 3d at 920 ("Federal Rule of Civil Procedure 8(d)(2) permits alternative pleading, but requires the pleader to use a formulation from which it can be reasonably inferred that the pleader is indeed pleading in the alternative."). No one wants to hear the same thing twice, especially judges and juries.

"Claims that involve the same operative facts and same injury, and that require proof of essentially the same elements, are duplicative as opposed to alternative." *Id.* (citations omitted); *see also Taybron v. Baker*, 2018 WL 4489602, at *7 (N.D. Ill. 2018) (Lee, J.) ("Claims are

considered duplicative if they (1) involve the same operative facts, (2) involve the same injury, and (3) require proof of essentially the same elements.").

Substance is what matters, not labels. Calling a claim something different doesn't mean it's a different claim. For pleadings and people, the packaging doesn't matter – what's inside is what counts.

*Barrow* is a good example. That plaintiff brought a false arrest claim, and a separate claim for an unreasonable seizure. Judge Dow dismissed the second claim as duplicative. *See Barrow*, 38 F. Supp. 3d at 919.

Lots of cases reach the same conclusion. *See, e.g.*, *Lonzo v. Blanco*, 2022 WL 1211483, at *1 (N.D. Ill. 2022) ("[The] Fourth Amendment false arrest and detention claim in Count I is duplicative of [the] Fourth Amendment unlawful seizure and detention claim in Count II. The Court therefore grants defendants' motion to dismiss Count I."); *Robinson v. City of Chicago*, 2024 WL 3161662, at *2 (N.D. Ill. 2024) (applying *Barrow* in a similar Fourth Amendment context); *Beringer*, 2008 WL 4890501, at *4 (holding that "claims for negligence and breach of fiduciary duty should be dismissed as duplicative" of each other and of a breach of contract claim); *FDIC v. Saphir*, 2011 WL 3876918, at *9 (N.D. Ill. 2011) (same); *Walker v. Considine*, 2014 WL 6820130, at *4 (N.D. Ill. 2014) ("Therefore, even if this Court were to understand this as a due process detention claim, it would be based on the same allegations as the false imprisonment claim and should therefore also be dismissed as duplicative."); *see also Wade v. Collier*, 783 F.3d 1081, 1088 (7th Cir. 2015) ("Where an equal protection claim is merely a rewording of a malicious prosecution claim, dismissal of the equal protection claim is appropriate.").

Duplicative claims don't add anything to a case. A plaintiff can't recover for the same injury twice. And presenting the same claim under two different names would create problems for the jury. It would contribute nothing but confusion, or worse – it could lead to inconsistent jury verdicts.

Here, Roberts alleges two counts against the City Defendants for the officers' mistaken entry into her apartment. They allege the same thing, but call it something different.

Count I alleges that the officers "violated [Roberts's] Fourth Amendment Right to be free from unreasonable searches." *See* Am. Cplt., at ¶ 36 (Dckt. No. 34). The violation stemmed from the officers "raid[ing] her home without a warrant or probable cause." *Id.* at ¶¶ 31, 35.

Count II alleges the same thing, with a privacy gloss. Count II starts off like Count I, complaining that the officers entered her "residence without probable cause or a warrant, in violation of the Fourth Amendment." *Id.* at ¶ 47. But Count II adds that the raid "caused a physical invasion of Plaintiff's residence and her *right to privacy*." *Id.* at ¶¶ 47, 50 (emphasis added).

The phrases "right to privacy" and "invasion of privacy" get thrown around in lots of areas of the law. *See, e.g.*, *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 550 (7th Cir. 2014) (discussing the Fourth Amendment privacy right); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 549 (7th Cir. 2009) (discussing the tort-law right of privacy); *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965) (discussing a constitutional right of privacy).

The Constitution makes no mention of privacy, but the Fourth Amendment does protect the privacy and primacy of the home. "'Freedom' in one's own 'dwelling is the archetype of the privacy protection secured by the Fourth Amendment.'" *See Lange v. California*, 594 U.S.

8

295, 303 (2021) (citation omitted). "[O]ne who owns and possesses a house[] almost always has a reasonable expectation of privacy in it." *See Byrd v. United States*, 584 U.S. 395, 404 (2018).

"At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *See Florida v. Jardines*, 569 U.S. 1, 6 (2013) (citation omitted). The Fourth Amendment does not protect privacy writ large, but it does protect private abodes.

In her brief, Roberts admits that her claim about the right to privacy rests on the Fourth Amendment. *See* Pl.'s Resp. to Mtn. to Dismiss, at 3 (Dckt. No. 38). The heart of the alleged invasion of privacy is that the officers "search[ed] [Roberts's] home without probable cause." *Id.*

So, Roberts brings two Fourth Amendment claims about the police raid. The first claim alleges a violation of the Fourth Amendment. The second claim alleges a violation of her privacy when the police violated the Fourth Amendment. It's the same thing.

To be clear, the case does involve some sensitive facts. Roberts alleges that she was not fully clothed when the police barged in. She feels embarrassed and disrespected by the fact that the police saw her exposed.

This Court is not dismissing any of those allegations. The Court is simply saying that she can make those allegations in the first claim. There is no need for a second claim to cover what's already covered by the first claim.

### Conclusion

For the foregoing reasons, the partial motion to dismiss is granted. Counts III and IV are dismissed to the extent that they could be read as claims against the City or the officers. The complaint is dismissed to the extent that it alleges various liability or *respondeat superior* against the City. The City is dismissed. Count II (the Fourth Amendment claim about an invasion of

property) is dismissed as duplicative of Count I (the Fourth Amendment claim). Count I otherwise remains pending.

Date: March 31, 2026

_____

Steven C. Seeger
United States District Judge